ALLEN *v.* DAYTON HOTEL CO.

(*Knoxville.* November 1, 1895.)

1. FRAUDULENT CONVEYANCE. *Mortgage by corporation to secure notes of its directors.*

A trust-deed executed by a corporation is not fraudulent because some of the notes secured thereby were executed individually by directors of the corporation who participated in the authorization of such deed, where such notes were given for a corporate indebtedness to evade a provision in the charter of the bank which loaned the money, prohibiting it from making a loan to any one person beyond a specified amount. (*Post, pp. 481–484.*)

2. CHANCERY PLEADING AND PRACTICE. *Dismissal of bill not permitted, when.*

A creditor who seeks to set aside a trust-deed and sale thereunder as fraudulent, and also attacks the validity of a tax title under which the purchaser at the sale under the trust-deed also claims title, cannot, on the hearing, dismiss his bill so far as the tax title is concerned, so as to throw the burden of proving its validity on defendant. (*Post, pp. 487–489.*)

3. BURDEN OF PROOF. *To show invalidity of tax title.*

Where the complainant attacks and the defendant asserts the validity of a tax title in their pleadings, the burden is upon complainant to prove its invalidity. (*Post, pp. 487, 488.*)

4. TAX SALE. *Mortgagee may purchase at, when.*

A mortgagee out of possession may make a valid purchase of the land at a sale for taxes. (*Post, pp. 489–491.*)

Cases cited and distinguished: Brien *v.* Marsh, 1 Tenn. Ch., 630; Watson *v.* Ryan, 3 Tenn. Ch., 46; Boyd *v.* Allen, 15 Lea, 91.

5. QUESTION DISCUSSED AND RESERVED.

Whether a deed of trust authorized by a majority of the board of directors at a special meeting is valid where one of the direct-

Allen *v.* Dayton Hotel Co.

ors was not present or notified of the meeting, and whether a purchaser at a sale thereunder acquires title to the mortgaged property. (*Post, pp. 484–488.*)

Cases cited: 37 Am. Dec., 20; 55 *Id.*, 216; 46 *Id.*, 746; 18 S. W. R., 759.

---

FROM RHEA.

---

Appeal from the Chancery Court of Rhea County. T. M. McCONNELL, Ch.

BURKETT, MILLER & MANSFIELD and J. B. SWAFFORD for Allen.

SHEPHERD & FRIERSON and AL. P. HAGGARD for First National Bank.

McALISTER, J.   This bill was filed in the Chancery Court of Rhea County by T. A. Allen and A. C. Broyles, who are creditors of the Dayton Hotel Company, to set aside an alleged fraudulent trust-deed and to subject the property therein conveyed to the payment of complainants' debts.   The record discloses that the Dayton Hotel Company was largely indebted to the First National Bank of Dayton for money loaned, and, on the thirteenth of April, 1892, the hotel company executed a deed of trust to A. J. King to secure its indebtedness to the Dayton Bank.   The trust-deed conveyed two lots in the town of Dayton, upon which was situ-

31—11 P

ated a valuable hotel, and it included also the personal property contained in said building. There was a foreclosure of this deed of trust on the twelfth of September, 1893, when the hotel property was bid in by the bank at the sum of $5,-000. The bank, immediately after the sale, surrendered to the hotel company all notes held against it and against its president and general manager, amounting to something over $12,000. It should be remarked that the hotel company was insolvent, and the assets conveyed and purchased by the bank at the foreclosure sale embraced its entire property. As already indicated, this bill was filed to set aside this trust-deed and the sale thereunder, and to subject the property to the payment of complainant's debts. The bank claimed title to the property not only under the trust sale, but also under a tax deed acquired by it at a chancery sale for delinquent State and county taxes. The Chancellor, on final hearing, denied complainants any relief, and dismissed the bill. Complainants appealed, and have assigned errors.

The Dayton Hotel Company was chartered May 13, 1891, under the general incorporating laws of the State. The incorporators were W. G. Allen, J. G. Allen, R. L. Allen, N. O. Allen, and T. A. Allen, who also constituted the board of directors, and finally became the only stockholders in said company. It is insisted that said trust-deed was fraudulent, and the product of a collusive agreement

on the part of the bank and a portion of the directors of the hotel company.  It is charged that two of the directors who participated in the meeting that authorized the trust-deed were directly interested, personally and financially, in the conveyance.

We are satisfied, upon an examination of this record, that N. O. Allen and R. L. Allen were not interested in this trust conveyance otherwise than as officers and stockholders of the Dayton Hotel Company, and that the charge of a fraudulent and collusive agreement between these two directors and the officers of the bank is without foundation in fact.  This charge is mainly based upon the bare fact that two of the notes secured by this deed of trust, each for the sum of $2,661, were executed by N. O. Allen and R. L. Allen individually, but this fact is fully explained in the record.  This indebtedness was in reality the indebtedness of the Dayton Hotel Company, and not the indebtedness of these gentlemen individually.  The entire indebtedness of the Dayton Hotel Company to the bank aggregated about $13,000, while the capital stock of this bank was $50,000.  Its charter prohibited it from making loans to any one individual or corporation to an amount exceeding one-tenth of its capital stock.  In order to obviate this difficulty, and after the indebtedness had been incurred, the Dayton Hotel Company executed its note to the bank for the sum of five thousand ($5,000) dollars,

and for the residue notes were executed by the individual. stockholders, secured by pledges of their stock in the hotel company. It was in this way the .individual notes of R. O. and R. L. Allen came to be executed, and while the transaction may have been an evasion of the law on the part of the bank, it is a matter that in nowise affects the merits of the present controversy.

The next assignment of error is that the deed of trust executed by the hotel company for the benefit of the bank was void, for the reason that T. A. Allen, one of the complainants, and a director in the hotel company, was not notified of the meeting at which said trust conveyance was authorized. It is conceded that only four of .the directors were present at this special meeting, and that complainant was not notified or represented. Counsel for complainant cite the case of *Bank of Little Rock* v. *McCarthy*, 18 S. W. R., 759, in which it was held that a mortgage authorized at a director's meeting, at which four were present, and the other received no notice, is illegal.

Says Mr. Thompson in his Commentaries on Corporations, Vol. III., Sec. 3932, viz.: "The cases that hold that a majority of a definite body being assembled, a majority of those assembled may act, imply that the quorum is regularly assembled, either in regular or stated meeting, or else upon due notice. . . . The settled law is said to be, in case of a definite body like a board of bank directors, a majority

Allen v. Dayton Hotel Co.

must be present at a regular meeting, or at a special meeting notified according to by-law, if there be any, or otherwise reasonably notified to all the members (excepting, perhaps, cases of absence at a distance), without fraud or attempt at surprise."

Again the same author says, at Sec. 3936, viz.: "The circumstances under which notice of corporate meetings must be given, in order that the action taken thereat should be valid, have been already considered, with the conclusion that where the meeting is a stated one, the time and place of which is fixed by some by-law or regulation, no notice of it is necessary, but that where it is a special or called meeting, all the members must be notified of it." The same author, at Sec. 706–7, says, viz.: "In the line of authority establishing the foregoing principles no break has been discovered. . . . The reason is, that each member has the right of consultation with the others, and that the minority have the right to be heard." *Dispatch Line* v. *Bellamy Mfg. Co.*, 37 Am. Dec., 20; *Edgerly* v. *Emerson*, 55 Am. Dec., 216; *Sargent* v. *Webster*, 13 Metcalf (Mass.), 497 (S. C., 46 Am. Dec., 746).

Says Mr. Beach, in his work on Private Corporations, Vol. I., Sec. 279, viz.: "An opportunity to deliberate, and, if possible, to convince their fellows, is the right of the minority, of which they cannot be deprived by the arbitrary will of the majority. Accordingly, notice of the time, place, and purpose of all special meetings, whether of stock-

holders or directors, is essential to the validity of any deliberative action taken thereat. But, in respect of notice, a manifest distinction exists between the general stated meetings of a corporation and its special- meetings. . . . Where the meeting is stated and general, no notice is required, either of the time or place of holding the meeting, or of the business to be transacted," etc.

Says Mr. Morawetz, in his work on Private Corporations, Vol. I., Sec. 531, viz.: "Notice of the meetings of directors of a corporation must be given in the same manner as notice of the meetings of shareholders. The notice must distinctly fix the time and place of meeting, and the notice must be given in time to enable the person notified to reach the place of meeting in the customary manner."

Again, the same author, at Sec. 532, says: "It has been held that, if a quorum of the directors of a corporation meet and unite in any determination, the company is bound thereby, whether the other directors were notified or not. But this view is certainly not correct. The shareholders in a corporation are entitled not only to the votes of the directors, but also to their influence and argument in the discussion which leads to the passage of their resolutions. While it may not be the duty of every director to be present at every meeting of the board, yet it is certainly the intention of the shareholders that every director shall have a right to be present at every meeting, in order to acquire full information

concerning the affairs of the corporation, and to give the other directors the benefit of his judgment and advice. If meetings could be held by a bare quorum, without notifying the other directors, the majority might virtually exclude the minority from all participation in the management of the company. If it appears that the meeting of directors was attended by a quorum, it will be presumed, in the absence of proof to the contrary, that due notice of the meeting was given to all the directors, and that all necessary formalities have been complied with." See, also, Secs. 479 and 481.

Mr. Cook, however, in his work on Stock and Stockholders, Vol. I., Sec. 713, says: "There has been some controversy and doubt as to the necessity of giving notice of directors' meetings. Many cases apply to directors' meetings the same rules that apply to stockholders' meetings. Other cases hold that less formality and strictness is required in calling a directors' meeting. Probably the former rule is safer, although the latter rule will ultimately prevail. The law is inclined to tolerate more freedom in the notice, calling, and holding of directors' meetings, inasmuch as the meetings are more frequent, absences more common, the acts less fundamental, and ratification by acting on the contracts more certain and easy."

The precise question arising upon this record is, whether a deed of trust authorized to be made by a majority of the directors, at a meeting of the board

especially called, is a valid conveyance of the corporate property where it appears that one of the directors was not present and had no notice of the meeting, and whether, on this account, property purchased or bid in by the beneficiary, at the foreclosure sale, may be subjected, by other creditors, to the payment of their debts. We are compelled to pretermit the decision of this question, since we find, upon an examination of the record, that the title of the bank to the property in question must be maintained upon another ground. The bill in this case not only seeks to set aside the trust-deed, for the reasons already stated, but it also attacks the validity of certain tax titles which the bank had acquired to this property under sales authorized by the Chancery Court. These tax titles are assaulted upon the ground that the Dayton Hotel Company, the tax debtor, was not served with process in the tax proceedings.

The defendant bank, in its answer, admitted the existence of the tax titles, and averred that the proceedings under which they were acquired were in all respects regular, and it relied upon said tax deeds as an independent title to the property. No proof whatever was taken on this point by either side, and, the burden of making such proof devolving upon complainant, the validity of the tax titles was left as established fact upon the record.

Confronted with this difficulty, counsel for complainants, in his concluding argument, moved to dismiss his bill, so far as it sought to impeach the

validity of the tax titles, and thus eliminate this issue entirely from the case. The Chancellor very properly overruled the motion.

The complainant having tendered this issue, it was incumbent upon him to prove it, and he could not, by withdrawing it, defeat the defense of independent title. The defendant, as the pleadings were formulated, was not called upon to offer any evidence in respect of the validity of its tax title until it was impeached by evidence on the part of complainant. But for the initiative assumed by complainant in his bill, the defense of an independent tax title, and the regularity of the proceedings under which it was held, must necessarily come from the defendant. To permit complainant, after the testimony is closed, to dismiss his bill so far as the tax titles were concerned, would result in the defendant being entrapped by delusive pleadings. Counsel for complainants, however, insists that defendant bank cannot rely upon its tax title to defeat the claim of complainant, and likens the attitude of the bank to that of a mortgagee in possession who has purchased the land at a tax sale. It is well settled that a person who is in possession of land claiming title when the taxes accrue, or who occupies such a fiduciary relation as to make it his duty to pay the taxes, can acquire no additional title by purchasing the land at a tax sale. Blackwell on Tax Titles, 399, 400; *Brien* v. *Marsh*, 1 Tenn. Ch., 630; *Watson* v. *Ryan*, 3 Tenn. Ch., 46;

*Boyd* v. *Allen*, 15 Lea, 91. When the payment of the taxes is a duty on the part of the mortgagee, he is like a trustee, and cannot affect the rights of the mortgagor by purchasing the property at a sale for such taxes. Such is his position when he has taken possession of the premises for the purpose of foreclosing his mortgage. He may pay the taxes and add the amount to the debt secured by the mortgage, but he cannot acquire an adverse title by a purchase at a sale by the tax collector. Jones on Mortgages, Vol. I., Sec. 714. But this principle, so well settled and universally recognized, is wholly inapplicable to the facts of this case. In the first place, the tax bills in question were filed during the year 1892, for the collection of delinquent taxes—State, county, and municipal—that accrued in prior years. The trust-deed from the Dayton Hotel Company to the First National Bank of Dayton was executed April 13, 1892, and foreclosed September 12, 1893, at which date the bank purchased the property and went into possession. The tax titles were acquired by the bank on May 24, 1893. It thus appears that the bank was not in possession of the property at the time the taxes in question accrued, nor when the property was sold under the tax proceedings, hence there was no duty devolving upon it to pay the taxes. The trust-deed was foreclosed, and the bank's purchase and possession thereunder were acquired at a subsequent date.

Says Mr. Jones, in his work on Mortgages, Vol. I., Sec. 713, viz.: "He (the mortgagee) may, however, under some circumstances acquire a tax title and hold it adversely to the owner of the equity of redemption, but this is only where he is under no obligation himself to pay the taxes on which the sale was made. Generally, a mortgagee not in possession is under no obligation to pay the taxes on the mortgaged property, and there is no reason why he may not acquire title to the property by a fair purchase at a tax sale." See, also, Pingrey on Mortgages, Vol. I.

Affirmed.