[No. 5721. Decided December 19, 1905.]

W. T. STOLL, *Respondent,* v. THOMAS S. GRIFFITH *et al.,*
*Appellants.*[1]

TAXATION — FORECLOSURE OF LIEN — SUMMONS — SUFFICIENCY. A
summons in foreclosure of a tax lien is not invalidated by reason of
an unnecessary explanation as to what is meant by the date of
service, when otherwise in proper form.

SAME—TO WHOM ADDRESSED. A summons in foreclosure of a tax
lien addressed to Emil Coulon is sufficient where he appears to
have been the owner of the property at the time the same was
assessed, although it was assessed to E. Coulon.

SAME—DEED—PRESUMPTION OF REGULARITY—IRREGULARITIES IN RE-
TURN OF SALE—EFFECT. The validity of a tax deed is not affected by
the recitals of the treasurer's return of sale, where the law does not
require or authorize such return but makes the deed *prima facie*
evidence that the sale was conducted in the manner provided by
law, especially where such return recites that the sale was so con-
ducted, and its other recitals are not necessarily inconsistent there-
with.

SAME—TAX TITLE—WHO MAY ACQUIRE—GRANTEE UNDER DEFEC-
TIVE DEED. The purchaser of premises from tenants in common,
whose deed may be defective as to part of the grantors, may further
assure his title by acquiring a tax title which accrued prior to his
ownership of the property, and he is not to be held to have acquired
the title in the interest of any of the former owners as tenants in
common with him.

VENDOR AND PURCHASER—CONTRACTS—PERFORMANCE. A contract
of a vendor to further assure the title by the acquisition of a tax
title is fully performed by acquiring the same and quitclaiming to
the grantee, although the time for taking an appeal from the tax
judgment has not yet expired.

Appeal from a judgment of the superior court for Spokane
county, Irwin, J., entered January 3, 1905, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action on contract. Affirmed.

*A. E. Gallagher* and *W. J. Thayer,* for appellants.

*Graves & Graves, B. B. Adams,* and *B. H. Kizer,* for re-
spondent.

[1] Reported in 82 Pac. 1025.

RUDKIN, J.—On June 8, 1898, a final receiver's receipt issued to the heirs of George M. Mutchler, deceased, for the N. E. ¼ of Sec. 10, Tp. 25, N., R. 42, E., W. M. On the 16th day of November, 1898, this receipt was followed by a patent from the United States to the same parties for the same land. On the 14th day of October, 1898, Henry G. Mutchler, Katie Bittner, and Flora R. Wolcott, claiming to be all the heirs of George M. Mutchler, deceased, conveyed said premises by warranty deed to Emil Coulon. Henry G. Mutchler signed this deed in his own behalf, and as attorney in fact for the other grantors. On the 28th day of July, 1899, Emil Coulon and wife conveyed said premises by warranty deed to John Hoscheit, and on the 19th day of May, 1900, Hoscheit and wife conveyed the same by warranty deed to the plaintiff, Stoll. On or about the 26th day of June, 1903, the plaintiff, Stoll, exchanged said tract, and other lands, with the defendants, Griffith and wife, for certain property in the city of Spokane.

Pending the negotiations leading up to such exchange, an abstract of title to the above tract, and the other lands embraced in said exchange, was submitted to Post, Avery & Higgins, the attorneys then representing the defendants. Such attorneys, under date of June 25, 1903, furnished the defendants with a written opinion, pointing out the following defects in the title to said northeast quarter of section ten. First, the abstract failed to show that the parties signing the deed to Coulon were the heirs, or all the heirs, of George M. Mutchler, deceased; second, the spouses of said heirs should have joined in said deed, in case said heirs were married; and, third, the power of attorney from Katie Bittner to Henry Mutchler was insufficient to authorize the execution of a deed in her behalf. This opinion closed as follows:

"It appears from the abstract that certificates of delinquency have been issued against all of the northeast quarter of section ten, all of which have been assigned to W. T. Stoll. Unless the objections urged above can be cured otherwise, it

might be desirable to foreclose these delinquent tax certificates and clear the title in that manner."

On said 26th day of June, 1903, the plaintiff and the defendants entered into a written agreement, which recited the conveyance of the property in the city of Spokane to the plaintiff, and that said property was subject to a mortgage in the sum of $1,500, and the lien of certain street grade assessments; also, the conveyance of said northeast quarter of section ten, and other property, to the defendants, and that there were certain irregularities, perhaps defects, in the title to the northeast quarter of section ten, which it was believed could be corrected. The agreement then proceeds as follows:

"Now therefore, this agreement is as follows: If the title to said northeast quarter of section ten (10), township twenty-six (26) north, of range forty-two (42) E., W. M., shall, at any time hereafter be, in any manner of means whatsoever, either by suit, foreclosure or otherwise, quieted and perfected in the first parties, but at the expense of the second party hereto, then the said first parties shall immediately pay said mortgage of fifteen hundred dollars ($1,500) to the said Northwestern and Pacific Hypotheek Bank, with the interest due thereon at the rate hereof, or if the second party shall in the meantime have paid the same, first parties will pay to the said second party said fifteen hundred dollars and interest thereon to this date, and will likewise at said time pay the said street grade taxes or assessments that have been levied upon or against said property prior to this time, with interest thereon to the date hereof, but if there shall be a breach of the second party's warranty of the title to the said northeast quarter of section ten (10), township twenty-six (26) north, of range forty-two (42), E., W. M., by which ownership thereof is lost to the first parties, the maximum measurement of the first party's damage by reason thereof, shall be the amount of said mortgage of fifteen hundred dollars ($1,500), with interest thereon, and the said street grade taxes or assessments with the penalties heretofore levied against the property by the first parties. The second party shall proceed with such suits or proceedings as he deems necessary, either in his own name or in the names of the first parties, to quiet and perfect the title to said premises."

On the 23rd day of July, 1903, the plaintiff, Stoll, instituted proceedings in the superior court of Spokane county, to foreclose certain tax certificates which constituted a lien on the northeast quarter of section ten. Such proceedings were had therein that a judgment was regularly entered, foreclosing the lien of said taxes, on the 29th day of September, 1903. The property was sold by the treasurer of Spokane county on the 17th day of October, 1903, pursuant to said judgment, and bid in by one W. S. Rugh. On the same day Rugh received a tax deed therefor, and immediately quit-claimed said premises to the plaintiff Stoll. The plaintiff tendered this deed to the defendants as a full and complete performance of the above agreement on his part, but the defendants refused to accept the same. The plaintiff thereupon brought this action to recover the amount of the mortgage debt and the street grade assessments. The plaintiff had judgment below and the defendants appeal.

The respondent bases his right to recover solely upon the ground that the tax foreclosure constituted a full and complete performance of his contract. We will therefor, not consider the various supposed defects in the original title, which are discussed at length in the appellants' brief. The foreclosure proceedings seem to be regular on their face, and we will only discuss such irregularities or defects therein as the appellants have pointed out. It is first contended that the summons as published did not confer jurisdiction on the court, for the reason that it required the defendants to appear "within sixty (60) days after the service of this summons and notice upon you, exclusive of the day of service, to wit: within sixty (60) days, after the 30th day of July, 1903, which is the date of the first publication hereof;" instead of within sixty days after the first publication of summons, exclusive of the day of such first publication, as the law requires. This objection is without merit. The summons cited the parties to appear within sixty days from the date of service, exclusive of the day of service, and then

proceeded to explain what was meant by the date of service, viz., the date of first publication, which is therein set forth. A similar summons was sustained by this court in *Luff v. Gowan*, 38 Wash. 504, 80 Pac. 766.

The next objection is that the summons was addressed to Emil Coulon and others, whereas the property was assessed to E. Coulon. Emil Coulon appears to have been the owner of the property at the time the taxes were levied and assessed, but the property was assessed to E. Coulon. This objection is equally without merit. *Williams v. Pittock*, 35 Wash. 271, 77 Pac. 385; *Morrison v. Shipman* 37 Wash. 171, 79 Pac. 632; *Spokane Falls etc. R. Co. v. Abitz*, 38 Wash. 8, 80 Pac. 192; *Luff v. Gowan, supra; Carson v. Titlow*, 38 Wash. 196, 80 Pac. 299; *Allen v. Peterson*, 38 Wash. 599, 80 Pac. 849; *Rowland v. Eskeland*, 40 Wash. 253, 82 Pac. 599.

The next objection is that the tax sale was void because the entire 160 acres was sold in bulk whereas each forty acre tract was separately assessed, and was ordered sold separately. This objection is based on a return of sale, filed by the county treasurer, which contains the following recitals:

"I attended, as required by law, at the time and place fixed for said sale, stated the amount due on said premises for taxes, interest and costs of this proceeding, and offered said premises for sale at public auction according to law, and to the bidder offering to take the least part of said lot, piece or parcel in payment of said tax, interest and costs of proceedings, when W. S. Rugh, being the best and highest bidder therefor, the whole of said tracts and premises were struck off by me to the said W. S. Rugh for the sum of $93.95, being the full amount due thereon, which was the whole price bid therefor, and there being no other better bid, and which sum I acknowledge to have received from him, and that I have heretofore, upon the 17th day of October, 1903, as treasurer, executed and delivered to him a deed to said premises so sold, as required by law."

This return was neither authorized nor required by law, and cannot be permitted to overturn the tax deed, or destroy the effect which the law accords to such deed. The law in force when this deed was executed provides that the treasurer's deed shall be *prima facie* evidence, "that the sale was conducted in the manner provided by law." Bal. Code, § 1767, subd. 6. Furthermore, this return was made on a printed form and is not necessarily inconsistent with the other recitals therein, and in the tax deed, to the effect that the sale was conducted in the manner provided by law.

The next objection is that the respondent was a tenant in common with one of the Mutchler heirs, by reason of a defect in the power of attorney through which he deraigned his title, and that, as such tenant in common, he could not acquire title to the common property at a tax sale. If we assume that Katie Bittner was one of the heirs to whom the patent issued, and that the power of attorney under which an attempt was made to convey her interest in the property was defective, the fact remains that the respondent and those under whom he claims held the land in controversy adversely to her and to all the world, under color of title and claim of right, for a period of five years before the tax sale. It is a general rule that, if one cotenant acquire title to the common property at a tax sale, the title so acquired inures to the benefit of the other cotenants. Some courts base the rule upon the confidential relation existing between the cotenants; others, upon the ground that the obligation to pay taxes on the common property rests equally upon all the cotenants, and that it would be inequitable to permit one or any number of them to take advantage of his or their own default and acquire the title of their cotenant at a tax sale. The courts which adopt the latter view hold generally that one cotenant may acquire title to the common property, as against his cotenant, where the property is sold for a tax which accrued before he acquired an interest in the common property, and which he was not obligated to pay. *Oswald v. Wolf,* 129 Ill.

200, 21 N. E. 839; *Sands v. Davis,* 40 Mich. 14; *Lybrand v. Haney,* 31 Wis. 230; *Allen v. Dayton Hotel Co.,* 95 Tenn. 480, 32 S. W. 962.

But whether the rule is founded on the confidential relations existing between the cotenants, or upon the duty of the several cotenants to pay the taxes against the common property, we are satisfied that the rule does not, and should not, apply in a case like this. Blackwell on Tax Titles, § 566, states the rule thus:

"One may always strengthen himself against an *adverse claimant* by purchasing a tax title; for example, a mortgagee who has foreclosed, or a mortgagee as against one claiming under a former tax sale, or a junior tax claimant as against a senior. *A defective title* will not stand in the way of purchase at a tax sale. One whose only interest in the land is based on a void deed may buy a tax title. In general a purchase by a *tenant in common,* or the husband of a tenant in common, inures to the benefit of all the cotenants; but this is not so if the purchasing cotenant holds adversely to the others, or the tax title existed before his tenancy or he did not buy the tax title until after it had matured in the hands of third persons, thus dissolving the cotenancy."

See, also, Id. 573. In *Wright v. Sperry,* 21 Wis. 331, the Sperrys, while owning an undivided one-fourth interest in certain real property, mortgaged the whole thereof, and the whole was sold at foreclosure sale. Wright succeeded to the interest of the purchaser at the foreclosure sale, and bought in an outstanding tax title. The Sperrys meanwhile acquired the remaining three-fourths interest in the mortgaged property, and claimed that they were tenants in common with the purchaser at the foreclosure sale, and that the tax title so acquired inured to their benefit. After stating the correlative rights and duties of cotenants, the court said:

"These authorities show that the doctrine of *Van Horne v. Fonda* applies only where tenants in common are in actual possession of the land, or where one enters as such tenant, and so his possession is the possession of all the tenants. During such possession, each is under obligation morally and

legally to protect their common estate, and if any one expends money in so doing, as in paying taxes, liens thereon, or buying in an adverse title, he has a right of action against his cotenant to recover the share he should have contributed. While he claims as a cotenant, he is presumed, if he buys in an outstanding title or pays off an incumbrance, to act not only for himself but for his cotenants. But after one tenant denies the rights of his cotenants, and claims the whole property, such claim being known to them, they have no longer any reason to suppose that in anything he does respecting the land he acts for them; but on the contrary they know that he claims and intends to act solely for his own benefit. It is then no longer a fraud on their rights for him to buy in an outstanding title, and hold it exclusively for his own benefit. Certainly it is not unreasonable so to hold, if he may, without such outstanding title, by merely entering into possession of and claiming the whole land, acquire by adverse possession a perfect title to the whole, unless his cotenants within twenty years commence an action against him."

We are satisfied that the rule here announced is the correct one, and that no rule of law or public policy forbade the respondent to further assure his title by acquiring the tax title, under the facts and circumstances of this case. The mere fact that the time to move against or appeal from the tax judgment had not expired when this action was commenced will not preclude a recovery. The court below could only look to the proofs offered to ascertain whether the respondent had complied with his contract. The court found that he had, and gave judgment accordingly. We find no error in the judgment, especially in view of the fact that the refusal of the appellants to accept the title was based solely on the ground that the tax foreclosure was void. The judgment is therefore affirmed.

MOUNT, C. J., DUNBAR, CROW, HADLEY, ROOT, and FULLERTON, JJ., concur.