[No. 11777.   Department Two.   April 27, 1914.]

DAVID BURGESS, *Plaintiff*, v. JOHN J. PETH *et al.*,
*Respondents*, WILLIAM HOGAN *et al.*,
*Appellants.*[1]

APPEAL—RIGHT TO ALLEGE ERROR—PARTIES NOT APPEALING.   Error cannot be alleged by a respondent who fails to file a cross-appeal; since the judgment is final as to him.

JUDGMENT—RES JUDICATA—MATTERS CONCLUDED—IDENTITY OF IS-SUES AND PARTIES.   Where, in an action to quiet title to lands claimed through receivership and tax proceedings, defendants answered, attacking the proceeding and claiming title as trustees for the use of the members of a brotherhood who had contributed to the purchase of the land, a judgment adverse to defendants, holding that the answer showed no right in any of the defendants, is *res judicata* and a bar to a subsequent intervention, in another action to quiet title, under a plea attacking the receivership and tax proceedings and alleging the title to be originally in the first trustees, and in the interveners as their successors, for the use and benefit of the membership of the brotherhood at large, half of the present trustees having been defendants in the first suit.

CHARITIES—ABANDONMENT OF PURPOSE.   There is an abandonment of an unincorporated voluntary society, and a failure of its contemplated charitable trust in lands, where it appears that its affairs were wound up in a receivership proceeding in 1905, the constitution required meetings to be held at least once a year, and no meetings were held or officers elected until 1912, all the members were in default in the payment of dues, and the only purpose in attempting to keep the association alive was to continue litigation, without regard to the original beneficial purpose of the society.

TAXATION—TAX TITLE — ACTION TO SET ASIDE — CONDITION PRECE-DENT.   In an action to set aside tax proceedings, it is a condition precedent fixed by statute that a tender be made of the amount of taxes paid.

SAME — TAX SALE — RIGHT TO PURCHASE.   The fact that a receiver's sale was subject to taxes, requiring the purchaser to pay the price without deduction of taxes due, does not obligate him to pay the taxes or prevent him from purchasing an outstanding tax title.

[1]Reported in 140 Pac. 351.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered December 30, 1912, upon findings in favor of the defendants, in an action to quiet title. Affirmed.

*Geo. McKay* and *R. Winsor*, for appellants.

*E. C. Million* and *Geo. Friend*, for respondents.

MORRIS, J.—Many of the facts in this case are set forth in *Peth v. Spear*, 63 Wash. 291, 115 Pac. 164, to which reference is made, as this appeal is an attack on Peth's title to the land involved in that action. Nothing need be said as to the contention of the plaintiff in this action since, having failed to appeal, the decree has become final as to him. The appellants came into the action as interveners in September, 1912, alleging that they were socialists and the acting trustees of the Brotherhood of the Cooperative Commonwealth, an unincorporated, voluntary association; that the lands in question were acquired by the association, and were to be held in trust by its trustees as a charitable trust. They then attack the receivership and tax proceedings through which respondents claim title, and pray that these proceedings and the resulting conveyances to respondents be set aside, and that the title to the land be quieted in them. The lower court has found against them on these several contentions, and they have appealed.

The receivership proceedings referred to in *Peth v. Spear, supra,* were commenced in 1906 and ended in 1908. All of the trustees then acting, and who had been elected as such at the annual meeting in January, 1905, were made parties in that proceeding, together with all other persons who were then members of the colony or who claimed any interest in the property. So far as we can discover from the record, nothing was done by any persons claiming to represent any rights in the premises, until in June, 1909, when, at a called meeting of the brotherhood, E. E. Spear was authorized to represent it in any defense it might have to the

action brought by Peth to quiet title. The record in that case shows that Spear appeared and filed an answer on behalf of himself and others who had been made defendants in that action, and it was this answer which we then held failed to show any title or right of possession in the then defendants.

The next step appears to be a meeting on June 26, 1909, when some eighteen persons met and voted to organize themselves into a local of the brotherhood. Nothing more seems to have been done until January 1, 1912, when some persons (who or how many is not shown, except the minutes recite that, inasmuch as there was no quorum of the trustees present, the chair appointed two persons to act as trustees) met and called a meeting on January 29, 1912, to elect trustees. This meeting was held, eight persons being present, and the interveners were elected as trustees.

Inasmuch as the answer in *Peth v. Spear* was held to show no right in any of the then defendants, it might be well to compare that answer with the present contention of appellants. In that answer, it was alleged that the title and right of possession to the property were in the eight trustees and their successors, for the use and benefit of those who had contributed to the fund paid for the purchase of the land; that the brotherhood never had any legal existence or capacity to transact business or to receive the title to the land, and never became a beneficiary under the trust deed. The receivership proceedings and the tax foreclosure proceedings were then attacked, with the title acquired by Peth in those proceedings, and the prayer was to set aside those proceedings and the deeds issued therein, and decree the defendants to be tenants in common of the land. The interveners' plea in this action is the same as in the answer in the former case, so far as it attacks the receivership and tax foreclosure proceedings and the deeds issued to Peth thereunder. It alleges the title and right of possession as originally in the trustees named in the first deeds and in the appellants as their suc-

cessors. So that the only difference between the two pleas is that in the former the title and right of possession were alleged to be in the trustees for the benefit of those who had contributed to the purchase of the land, while in the latter the title and right of possession were in the trustees for the benefit of the membership at large. In the first plea, it was sought to have the trust declared void because there were no beneficiaries capable of ascertainment for whose benefit the trust could be enforced, while in this plea it is sought to establish the trust and quiet the title in the interveners as trustees.

As we have seen, the defense in the first case was made by Spear under authority from those who claimed to then represent the brotherhood, and that authority is not here attacked. It seems to us, because of this fact, that decree is as final and binding upon those who now claim to represent the association as it was upon those who then claimed to represent it, and that it is *res adjudicata*, not only to the defense that was interposed, but to any that might have been interposed, including the one now set up; for if this is a good plea now, it was a good plea then. Of these eight interveners, four were defendants in the first *Peth* case, together with all those who then were acting as trustees. It also appears that, after the appointment of the receiver in 1906, the officers of the brotherhood failed to perform any duties as such, and the scheme was, to all intents and purposes, abandoned by all those who had been parties to it, and the only life injected into it was the meeting called in June, 1909, when Spear was authorized to make a defense to the *Peth* suit. The same can be said of the present situation. The only purpose of the action of these interveners in seeking to keep alive this brotherhood is to continue litigation based apparently upon what was said in the first case as to a charitable trust. The constitution of this brotherhood provides that meetings of the national organization shall be held at least once a year. So far as we can gather, there was no attention paid to this

provision and no election of trustees between 1905 and 1912, the national organization being abandoned when the receiver was appointed in 1906. Neither has there been any attempt to organize any so-called locals under the constitution, save the one organized at Burlington in 1907; and at the time of this meeting all the members were in default for over two years, contrary to the by-laws of the brotherhood, which provide that a member may not continue in good standing who is in arrears for dues for a longer period than three months.

It seems clear to us that the purposes of this trust had failed and that this brotherhood scheme had been abandoned prior to the commencement of this action, except as these appellants sought to keep it alive for the purpose of continuing this litigation. The original brotherhood as it then existed was dissolved and destroyed in the receivership proceedings, and there has been no attempt to reorganize it for the purpose of continuing what its promoters deemed to be its beneficial purposes.

So far as the receivership and tax foreclosure proceedings are concerned, nothing is shown against their validity, and no reason appears why the same effect should not be given them as in any other like proceedings. Certainly, as to the portion of the lands held by Peth under the tax title, appellants could obtain no relief except in observing the condition precedent fixed by the statute in actions seeking to overthrow such proceedings by making a tender of the amount represented by the taxes paid. The idea is advanced, in order to escape this requirement, that the receiver's sale was made subject to the taxes, and that it therefore became the duty of Peth to pay the taxes. The only meaning to be given to that provision is that, as between the receiver and the purchaser at the sale, the purchaser must pay the taxes, and could not deduct the amount due for taxes from the price to be paid the receiver. Peth was a stranger to the land and was under no duty, either moral or legal, to pay the taxes. The case, therefore, does not fall within those cited

by appellants, of which *Christy v. Fisher,* 58 Cal. 256, is an illustration, which holds that one who is under a moral or legal obligation to pay taxes cannot become a purchaser at a tax sale. So far as we know, there was nothing which prevented Peth from purchasing the tax title issued to one McCoy upon a certificate of delinquency for the taxes of 1904, issued February 6, 1906, eighteen months prior to the time when Peth became the purchaser at the receiver's sale in June, 1907. *Stoll v. Griffith,* 41 Wash. 37, 82 Pac. 1025.

We are therefore of the opinion that these interveners have no rights superior to those vesting in Peth under the receivership and tax foreclosure sales, and that the decree of the lower court should be, and it is, in all things affirmed.

CROW, C. J., PARKER, and MOUNT, JJ., concur.