FREDERICK HEGER and AUGUSTA HEGER v. KATE G. BUNCH and HARRISON K. BUNCH, Appellants.—12 S. W. (2d) 459.

Division One, December 31, 1928.

*P. A. Griswold* for appellant.

760

*Jeffries, Simpson & Plummer* for respondents.

GANTT, J.—Suit to quiet title to land described in the petition, as follows:

"A lot of ground in blocks 4099 and 4102 of the city of St. Louis, State of Missouri, having a front of three hundred and eighty-five (385) feet on the north line of Magnolia Avenue by a depth northwardly of three hundred and eighty (380) feet to the south line of Botanical Avenue, and bounded east by a line five hundred and twenty-five (525) feet, more or less, west of the west line of Alfred Avenue, or by property now or formerly of John A. Busch and Ada Busch, his wife, on the west by property now or formerly owned by William Remmert, together with improvements thereon, known as 4601 Magnolia Avenue."

The petition is conventional. The answer is a denial of an interest in plaintiffs and an allegation of ownership in the defendants. The reply is a denial of an interest in the defendants and a plea of the statutes of limitations. Judgment was for plaintiffs, and defendants appealed.

Pending the appeal, the defendant Harrison K. Bunch died, and thereafter defendant Kate G. Bunch purchased the alleged interest of Harrison K. Bunch in the land from his heirs. Thereupon she was substituted as appellant in lieu of Harrison K. Bunch, deceased, and the appeal is prosecuted by her as appellant and as successor of her co-appellant.

The facts are as follows:

Mary Jones, a widow with two children—John G. Jones and Elizabeth Jones—cohabited in St. Louis County with Thomas Jefferson Payne, a widower with one child—Benjamin Howard Payne —from 1840 to 1846. During this time Thomas Jefferson Payne, Jr., and Bryan Mullanphy Payne were born to them. Thereafter, and on November 10, 1846, they entered into a written contract to marry, and were ceremonially married on November 16, 1846. It was agreed in the contract, among other things, "that the real and personal property and all interest therein in law and equity in any and all parts of the State of Missouri that may be, belong to, or be owned by the said Mary Jones at the time of her death shall, after the death of said Mary Jones and not before, go to, belong to, be owned by and vested in Benjamin Howard Payne (son of Thomas Jefferson Payne), Thomas Jefferson and Bryan Mullanphy (sons of Mary Jones) and to such child or children as may be born during said future marriage and to their heirs and assigns forever in equal parts." And "that John Jones (son of Mary Jones) and Elizabeth Jones, her daughter, shall not, under any circumstances whatever, inherit or take any interest either in law or equity in any real and personal estate that the said Mary Jones now has or may have at any time during her lifetime in any part of the State of Missouri." The contract was signed "Thomas J. Payne," and "Mary Jones." They made acknowledgment as single persons.

Edward Howard Payne was born to Thomas Jefferson Payne and Mary Jones Payne after the ceremonial marriage. Their son Bryan Mullanphy Payne died in infancy. Mary Jones Payne died in 1853, the owner of the land involved in this litigation and leaving as her only heirs Thomas Jefferson Payne (her husband), Elizabeth Jones and John G. Jones (her children by her former husband), Thomas Jefferson Payne, Jr., and Edward Howard Payne, her sons by Thomas Jefferson Payne. John G. Jones died in 1866, leaving no child or descendants of a deceased child. Thomas Jefferson Payne died in 1867. Benjamin Howard Payne (son of Thomas Jefferson Payne by his first wife) died a few days thereafter, leaving as his heirs Adelia R., Alfred, Nellie L., Robert H., Jefferson and Fannie F. Payne.

On June 30, 1870, an *ex parte* partition suit was filed in the Circuit Court of St. Louis County by Thomas Jefferson Payne, Jr., Edward Howard Payne, and the children of Benjamin Howard Payne to partition land then located in St. Louis County and now located in the city of St. Louis, which said land included the land described in plaintiffs' petition herein. Petition was decreed, and the land described in plaintiffs' petition herein as in city block 4099 was set off and awarded to Thomas Jefferson Payne, Jr., and the land therein described as in city block 4102 was set off and awarded to Nellie L. Payne. Elizabeth Jones was not made a party to the partition suit—no doubt for the reason that under the marriage contract she was excluded from inheriting any property belonging to her mother. Elizabeth Jones married William Adair, and, with her husband, on August 20, 1889, conveyed to appellant Harrison Bunch an undivided one-third interest in all of the land she claimed to own as an heir of Mary Jones.

Mary Jones Payne is the common source of title. Appellant claims an interest in the land by deed from Elizabeth Jones Adair and her husband, who claimed Elizabeth to be the owner of the land by inheritance from her mother, Mary Jones Payne.

Respondents claim to own the land by mesne conveyances from Thomas Jefferson Payne, Jr., and Nellie L. Payne, who, with other parties to the partition suit, claimed to be the owners of the land under the marriage contract.

Appellant contends that at the time of the execution of the marriage contract Thomas Jefferson Payne and Mary Jones were husband and wife under the common law; that her estate in the land described in the petition being a legal estate and not a separate equitable estate, the marriage contract was ineffectual to convey her land or any interest therein, for the reason the certificate of acknowledgment to the contract did not set forth that Mary Jones was made acquainted with the contents of the instrument, nor that she was

examined apart from her husband, nor that she executed same without compulsion or undue influence of her husband. [Citing Sec. 39, Chap. 32, R. S. 1845; Sec. 39, Chap. 32, R. S. 1855; Sec. 681, Chap. 32, R. S. 1879.]

Respondents admit the law at that time required the certificate of acknowledgment of a married woman to a marriage contract to "be taken and certified in the same manner as deeds of conveyance for land." [Sec. 2, Chap. 114, R. S. 1845, p. 728; Sec. 39, Chap. 32, R. S. 1845, p. 226.] However, they contend that Thomas Jefferson Payne and Mary Jones were not husband and wife at the time of the execution of the contract, and that Mary Jones having made acknowledgment to the contract as required by law of a single woman, the contract was effectual to convey land.

Appellant does not rely on an express contract of common-law marriage, but on a presumption of such marriage from the facts in evidence. "This court has put itself on record as in favor of stringent proof of common-law marriages." [Topper v. Perry, 197 Mo. 531, 95 S. W. 203; Bishop v. Brittain Inv. Co., 229 Mo. 699, 129 S. W. 668; Williams v. Williams, 259 Mo. 242, 168 S. W. 616; Perkins v. Silverman, 284 Mo. 238, 223 S. W. 895.]

In Cargile v. Wood, 63 Mo. 501, l. c. 513, we said:

"Where parties have cohabited together and held themselves out as man and wife, and there are circumstances from which a present contract may be inferred, the law, out of charity and in favor of innocence and good morals, will presume matrimony. The law in general presumes against vice and immorality, and on this ground holds acknowledgment, cohabitation and reputation presumptive evidence of marriage. Mere cohabitation is not usually considered sufficient.

"Bishop lays down the doctrine that 'cohabitation, and the reputation of being husband and wife, are usually considered together in questions concerning the proof of marriage; the one being in a certain sense the shadow of the other. Some of the authorities favor the idea that reputation of itself may be received as sufficient proof prima-facie, but it must be uniform and general; and if there is a conflict in the repute, it will not establish the marriage. On the other hand, its sufficiency in any case has been denied, unless there be accompanying proof of cohabitation.' [1 Bishop, Marriage and Divorce (5 Ed.), sec. 438.]

"Cohabitation and reputation are at best only presumptive proofs, and when one of these foundations is withdrawn, what remains is too weak to build a presumption on. There is good sense in the Scotch law, by which cohabitation alone is considered insufficient, and which requires in addition habit and repute, because it is

said the parties may eat, live and sleep together as mistress and keeper without any intention of entering into marriage.''

There is no evidence in the record tending to show the parties were reputed to be husband and wife by their neighbors. Appellant argues that the names given the children born during the cohabitation of Mary Jones with Thomas Jefferson Payne prior to the ceremonial marriage and the statement of Thomas Jefferson Payne in the marriage contract that these children were his ''lawful and legitimate children'' are evidence tending to show there was a common-law marriage. Respondents answer that the names given the children and said statement in the marriage contract are evidence only that Thomas Jefferson Payne was the father of the children, and that he made said statement in the contract to legitimate the children under Section 9, Chapter 50, Revised Statutes 1845, as follows:

''If a man, having by a woman, a child, or children, and shall afterwards intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated.''

Respondents further answer by directing attention to the agreement in the contract to intermarry, and argue that if a common-law marriage existed there was no necessity for such an agreement. They further direct attention to the several references in the contract to a ''future marriage,'' and argue that a future marriage is inconsistent with the claim of a common-law marriage. Attention is also directed to the fact that Mary Jones is referred to in the contract by the name of Jones and not by the name of Payne, and that she signed the contract by the name of Mary Jones, and to the absence of evidence tending to show that the parties lived together openly or that any one ever knew of the parentage of the children prior to the execution of the marriage contract, or that these children lived with Thomas Jefferson Payne and Mary Jones.

These contentions of the appellant and respondents were questions of fact to be determined by the trial court. This marriage contract is not a stranger to this court. In Adair v. Mette, 156 Mo. 496, 57 S. W. 551, the plaintiff relied upon cohabitation and reputation to establish a common-law marriage between Thomas Jefferson Payne and Mary Jones, and there was evidence of both cohabitation and reputation. The defendant introduced in evidence this marriage contract as tending to show there was no common-law marriage. The jury was instructed that a marriage might be presumed from cohabitation and reputation, and they were further instructed that if these things were found to exist, a marriage might be inferred regardless of the subsequent marriage contract. On a consideration of these instructions, we said:

''The question of fact in the case to be determined by the jury, on the evidence, under Instructions 1 and 2, was, whether at any

time prior to the 10th of November, 1846, Mary Jones and Thomas J. Payne had lawfully intermarried with each other? The burden of proving that fact was on the plaintiff. . . .

"The vice of these two instructions, when read together is, that in the first the jury are in effect told that they may infer a marriage from 'acknowledgment, cohabitation and reputation,' regardless of the circumstances in evidence in the case tending to prove that in fact they were not married prior to the 16th of November, 1846; while in the second instruction they are told to disregard the strongest and most potent fact, i. e., the ante-nuptial contract, in that chain of circumstances, as of 'no force or effect' and 'to give it no consideration' as against such inference. Thus for all practical purposes rendering the inference conclusive, and destroying the defense—by converting what in law is only a rebuttable presumption into a conclusive one in effect. This was palpable and prejudicial error for which the judgment should be reversed."

The instant case was tried by the court, without a jury. No equitable issues were tendered by the pleadings and no instructions were asked or given. The record discloses there was substantial evidence to sustain the finding of the court that there was no common-law marriage, and the judgment should not be disturbed.

Appellant directs attention to the following cases: Adger v. Ackerman, 115 Fed. 124; Shank v. Wilson, 33 Wash. 612; Betsinger v. Chapman, 88 N. Y. 487; Starr v. Peck, 1 Hill (N. Y.) 270.

In the Adger and Shank cases it was ruled that "a subsequent ceremonial marriage is not inconsistent with a prior common-law marriage, and does not necessarily overcome the presumption thereof which arises from matrimonial cohabitation, the declarations and conduct of the parties, and their reputation."

We agree to this conclusion, but in the instant case there was a written marriage contract containing statements tending to show there was no common-law marriage, and there was no evidence tending to show the parties were known as husband and wife by their neighbors.

In the Betsinger case there was a written marriage contract, and there was evidence of both cohabitation and reputation before the ceremonial marriage. The terms of the contract in said case differed from the terms of the contract in the instant case. The jury found a common-law marriage, and, on review, the judgment was affirmed, for the reason there was substantial evidence to sustain the verdict.

In the Starr case it was ruled as follows: "Secret cohabitation, pregnancy and birth, followed by immediate solemnization and public cohabitation for life, would seem to furnish considerable evidence that the parties had agreed, before that connection which re-

766

sulted in pregnancy, to consider themselves as married in fact.''
That is not the rule in this State.

It follows the judgment should be affirmed. It is so ordered. All
concur.