Pearl PRESTON, Appellant,

v.

George PRESTON, Respondent.

No. 23203.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

Lynn M. Ewing, Jr., Ewing, Ewing,. Ewing, Carter & Wright, Nevada, for appellant.

J. Carrol Combs, Combs & Combs, Lamar, for respondent.

BROADDUS, Judge.

This is an appeal by the plaintiff, Pearl' Preston, from an order by the trial court denying her application for alimony *pendente lite* and attorney's fees.

This case was originated by the plaintiff, when she filed her original petition for divorce, alleging that plaintiff and defendant were married in California in August, 1949,. intimating a ceremonial marriage.

Then, for reasons not disclosed by the record, plaintiff filed her amended petition alleging that plaintiff went to California in August, 1949, and there in September, 1949, *"plaintiff and defendant agreed to marry one another;* that thereafter the parties commenced to live together as husband and wife". This petition further alleges there was no license or marriage ceremony, and that the parties then moved to Kansas and lived there "off and on" until 1954.

Thereafter plaintiff filed her "Second Amended Petition" wherein she alleged that in the State of California in September, 1949, "plaintiff and defendant then and there agreed to be husband and wife", and thereafter lived together as husband and wife; that thereafter they moved to Kansas and continued to live together and to perform certain acts, commonly done only by husband and wife, and this latest petition states: "And lived together as above stated and did the things above alleged *that they did then and there renew and continue their agreement earlier made to be then and there husband and wife*". (Italics ours.)

On the same day the Second Amended Petition was filed, plaintiff filed a motion for attorney's fees and alimony *pendente lite*.

The plaintiff testified that the parties lived together in California for six months and then "moved back to the State of Missouri—Stockton, Missouri" and resided in Missouri as husband and wife until October of 1950, or over a year after the purported union in California; that defendant went to work for Joseph Pohl of Nevada, Missouri, as foreman in the contracting business, building levees, roads and other dirt work. Plaintiff stated that the parties went to Kansas in October, 1950, and returned to Stockton, Missouri, in January, 1951; that they did return to Kansas to work at various times but always returned to Missouri and were not in Kansas after 1956.

There was no testimony by the plaintiff that any new or different agreement concerning the relation of the parties was ever made in the State of Kansas or that their relationship was any different than it had been in the States of California and Missouri.

It is conceded in the pleadings, testimony and plaintiff's brief that there was no ceremonial marriage between the parties, and further that common-law marriages are not recognized in either California or Missouri.

The defendant, by his answer, denied the marriage between the parties.

■■■■ The plaintiff to be entitled to temporary alimony and attorney's fees had the burden of proving a valid marriage (Hill v. Hill, Mo.App., 236 S.W.2d 394, loc. cit. 400 and Kruse v. Kruse, 231 Mo.App. 1171, 85 S.W.2d 214, loc. cit. 216) and where the plaintiff, as here, relies upon the presumption of a common-law marriage, from acts on the part of the parties, the court requires "stringent proof" of the marriage.

"Appellant does not rely on an express contract of common-law marriage, but on a presumption of such marriage from the facts in evidence. *This court has put itself on record as in favor of stringent proof of common-law marriages*". (Citations.) (Italics supplied.) Heger v. Bunch, 321 Mo. 758, 12 S.W.2d 459, loc. cit. 460.

Here it is conceded that any agreements between the parties or acts of the parties in California or Missouri would not and could not result in a valid common-law marriage in those states.

The meretricious relationship between the parties in California and Missouri is admitted in the pleadings and by the plaintiff.

Both the pleadings and the testimony of the plaintiff are silent as to any new or different agreement or arrangement in the State of Kansas except for the statement in the second amended petition, that by doing the acts described (which they had been doing in California and Missouri for over a year) "they did then and there renew and *continue* their agreement *earlier made to be then and there husband and wife*." (Italics added.)

There is not even a suggestion that the parties made any new or different agreement, or that they conducted themselves in any manner other than what they had been doing.

Although the law of Kansas does recognize common-law marriages between resi-

dents of that state, that same law makes certain requirements for the validity of such extra-curricular relationship.

In the first place, every Kansas case examined is a case where the parties have been actual *bona fide* residents of Kansas, and not merely transient workers, whose actual permanent residence is shown to be in another state.

In the second place, the laws of Kansas require that the parties enter into a "present agreement" to be husband and wife— not renew or continue an agreement, with no legal standing made a year or more before in another state. The record here fails to enlighten the court as to which particular time or place when the parties were in Kansas, that the plaintiff claims the purported marital status in that state was consummated.

The Kansas Supreme Court has held, concerning such relationships, that: "Nothing in our statutes prohibits a marriage per verba de presenti, or at common law; and so it has been held that, where there are no impediments existing, *a present consent between parties to then take* each other as man and wife, followed by cohabitation, is sufficient to constitute a valid marriage". (Citations.) (Italics added.) Shorten et al. v. Judd et al., 60 Kan. 73, loc. cit. 77, 55 P. 286, loc. cit. 287.

"The requisites for a common-law marriage are present capacity of the parties, *a contract to assume the marriage status at the time the contract is made* and a holding of each other out to the public as husband and wife. It is not necessary that the contract be in any particular form." Cain v. Cain, 160 Kan. 672, loc. cit. 676, 165 P.2d 221, loc. cit. 223.

"G.S.1949, 23–101, provides that the marriage contract is to be considered in law as a civil contract to which the consent of the parties is essential, and in order to establish a common law marriage, it is essential that the parties have a *mutual present consent* to the marriage. Pitney v. Pitney, 151 Kan.

848, 853, 101 P.2d 933 and cases therein cited." (Italics added.) Whetstone v. Whetstone, 178 Kan. 595, loc. cit. 596, 290 P.2d 1022, loc. cit. 1023.

That there must be a present agreement to be husband and wife is the general law, 35 Am.Jur., Marriage, Section 5, Page 182.

The courts of Missouri have also repeatedly held that there must be a present agreement to become husband and wife, followed by cohabitation, to establish a valid common-law marriage and that the parties must do more than enter into or continue a mere meretricious relationship. Pittman v. Scullin Steel Co., Mo.Sup., 289 S.W.2d 57, loc. cit. 62 (4–8); Perkins v. Silverman, 284 Mo. 238, 223 S.W. 895, loc. cit. 901 (5–6).

■ Here the fact that the meretricious relationship between the plaintiff and defendant began in California, resumed in Missouri, and continued from September, 1949 to October, 1950, is admitted by the pleadings and evidence. Under the law in Missouri such relationship is presumed to continue, without evidence to the contrary. The burden for the production of such evidence rests upon the plaintiff here.

■■ "When a particular status exists the law will presume its continuance, *and when it is asserted that it has been changed, some evidence of that fact must be produced. When the connection is illicit in its origin, the presumption is that it is likely to continue so, and if it is alleged that it was subsequently changed, it must be shown at what time it became lawful*". (Placing the burden of proof of change on the defendant there—plaintiff here.) (Italics added.) Cargile v. Wood, 63 Mo. 501, loc. cit. 514–515(2).

"It is plain from the statement of facts that Karshner and the plaintiff *sustained illicit relations long before July 10, 1913, when it is alleged the common-law contract of marriage was entered into between them.* Under such circumstances, *the law is well*

*settled that their meretricious relation is presumed to continue and the burden of proof is upon the plaintiff to satisfy the conscience of the court that a new, real relationship* of husband and wife *was thereafter* by mutual agreement in good faith entered into between them. Cargile v. Wood, 63 Mo. loc. cit. 514." (italics added); Perkins v. Silverman, 284 Mo. 238, 223 S.W. 895, loc. cit. 901.

Some of these cases, and the plaintiff in her brief also refer to the relationship between the parties "after an impediment to their marriage has been removed." In this case there is not even an intimation, in any of the pleadings or in the plaintiff's testimony, that any impediment of any nature existed, to prevent the parties from being married by ceremonial marriage either in California, Missouri or Kansas. Evidently neither of the parties deemed it necessary to enter into a state of matrimony before they began living together like husband and wife, or at any other time, between August, 1949 and March 1, 1958. Although there is nothing shown that would have prevented it, they just didn't get married.

This is not a case of a young, immature girl being misled or coerced into an illicit relationship. Plaintiff was a woman 35 years of age in 1949, went to California voluntarily and began living with the defendant without benefit of clergy. After six months she says they "moved back to the State of Missouri—Stockton, Missouri" (presumably their home town) and continued to live there under the same conditions for at least several months. Fortunately, there are no children involved here.

Plaintiff has not only failed to make a prima facie showing of marriage in this case, but has, by her sworn pleadings and testimony, refuted the fact of any marriage between the parties.

The judgment should be affirmed. It is so ordered. All concur.